IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:18-CR-00017-KDB-DCK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| RUSSELL THOMAS MELILLO, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant Russell Thomas Melillo's *pro se* "Motion for Immediate Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A) and Request for Counsel." (Doc. No. 40) ("Motion"). Having carefully reviewed the Defendant's Motion, exhibits, and all other relevant portions of the record, the Court will deny the Motion without prejudice to a renewed motion after exhaustion of his administrative remedies.

## I. BACKGROUND

On March 21, 2018, a grand jury in the Western District of North Carolina indicted Defendant for Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine in violation of 21 U.S.C. §§ 841 and 846, Possession with Intent to Distribute Methamphetamine in violation of 21 U.S.C. § 841 (3 counts), and for Possession of a Firearm in Furtherance of Drug Trafficking in violation of 18 U.S.C. § 924(c). (Doc. No. 1). On September 21, 2018, Defendant pled guilty to Count One, Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine and Count Two, Possession with Intent to Distribute Methamphetamine pursuant to a written plea agreement. (Doc. No. 21: Plea Agreement). As set forth in the Factual Basis agreed upon by the parties, from at least as early as on or about January 6, 2018, through on or about January 29, 2018

1

in Watauga County, Defendant and his co-conspirators distributed and possessed with the intent to distribute five hundred (500) grams or more of methamphetamine, and on January 6, 2018, Defendant possessed with the intent to distribute methamphetamine. (Doc. No. 20). On March 7, 2019, Defendant was sentenced by the Court to 92 months of imprisonment on each count, to run concurrently, plus five years of supervised release on each count, to run concurrently. (Doc. No. 35). Defendant is currently 44 years old and serving his sentence in the custody of the Bureau of Prisons (BOP) at FCI Beckley in West Virginia. His projected release date is September 14, 2024.

On May 20, 2020, Defendant filed his *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 40).[1] In the Motion, Defendant claims his past and current health conditions make him particularly vulnerable to becoming seriously ill from COVID-19. (Doc. No. 40, at 1-2). Defendant claims that he "has a history of (1) cardiac arrest with aspiration resulting in severe lung damage, (2) heart damage, (3) Hypertension, (4) Hepatitis-C, (5) Involuntary constant cough, (6) Seizures from post-concussive disorder, and (7) a volummous [sic] history of psychiatric disorder to include hospitalization and commitment, and (8) a history of positive turberculosis [sic] (TB) tests." *Id.*

The Government has filed a Response in Opposition to Defendant's Motion. (Doc. No. 43). The Government argues that Defendant's Motion should be denied because he has failed to exhaust

---

[1] Defendant also moved for appointment of counsel to assist him with his compassionate release motion. (Doc. No. 40). The Court has already denied his request for counsel in a previous order signed on May 28, 2020. (Doc. No. 41) ("Defendant has not shown extraordinary circumstances warranting the appointment of counsel at this time. The Motion to Appoint Counsel is therefore DENIED."). Additionally, a number of courts have denied a motion for appointment of counsel as moot where the motion for compassionate release is denied due to the inmate's failure to exhaust his administrative remedies. *See, e.g.*, *United States v. Tutt*, No. 6:17-CR-040-CHB-1, 2020 WL 2573462, at *2 (E.D. Ku. May 21, 2020); *United States v. Bolze*, No. 3:09-CR-93-TAV-CCS-1, -- F. Supp. 3d --, 2020 WL 2521273, at *9 (E.D. Tenn. May 13, 2020); *United States v. Woolum*, No. 5:84-CR-21-TBR, 2020 WL 1963787, at *2 (W.D. Ky. Apr. 23, 2020).

2

his administrative remedies as required under 18 U.S.C. § 3582(c). Should the Court reach the merits of Defendant's Motion, the Government contends that Defendant has not shown that he has a medical condition warranting a reduction; he has not established any other extraordinary and compelling reason to warrant such a reduction; and, Defendant poses a significant danger to the community and the 18 U.S.C. § 3553(a) factors weigh strongly against his release. *Id.* Because the Court finds that Defendant has not exhausted his administrative remedies as required under the statute, the Court will not reach the merits of the Motion.

## II. COMPASSIONATE RELEASE

Finality is an important attribute of criminal judgments and one "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Accordingly, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Compassionate release under 18 U.S.C. § 3582(c) is an exception to this general rule that a term of imprisonment may not be modified once imposed. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.—**The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction

3

> . . .
>
>> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c). A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g.*, *United States v. Ebbers*, 432 F. Supp. 3d 421, 426 (S.D.N.Y. Jan. 8, 2020); *United States v. Heromin*, No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

According to 18 U.S.C. § 3582(c), a prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Courts are split over whether the exhaustion requirement is jurisdictional or is a "case processing" rule that can be waived. *Compare United States v. Brown*, No. CR 12-20066-37-KHV, 2020 WL 1935053, at *1 (D. Kan. Apr. 22, 2020) ("The requirement to exhaust administrative remedies or wait 30 days after the warden receives a request is jurisdictional.") *with United States v. Alam*, 960 F.3d 831 (6th Cir. June 2, 2020) (holding that the administrative exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A) is non-jurisdictional). The majority view is that the exhaustion requirement is a case processing rule and not jurisdictional. *See, e.g.*, *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

If the rule is not jurisdictional, then it can be waived, forfeited, or abandoned, and is otherwise subject to exceptions. *See United States v. Zukerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5 (S.D.N.Y. Apr. 14, 2020). These exceptions include "where it would be futile, either because the

agency decisionmakers are biased or because the agency has already determined the issue, . . . where the administrative process would be incapable of granting adequate relief, . . . [or] where pursuing agency review would subject plaintiffs to undue prejudice." *Zukerman*, 2020 WL 1659880, at *3 (citing *Washington v. Barr*, 925 F.3d 109, 118-19 (2d Cir. 2019)). It is Defendant's burden to show that he has exhausted his remedies or that an exception to the exhaustion requirement exists. *See, e.g.*, *United States v. Bolino*, No. 06-cr-0806(BMC), 2020 WL 32461, at *1 (E.D.N.Y. Jan. 2, 2020) (requiring defendant to prove that the exhaustion requirement has been met).

Here, the Government argues that Defendant has not exhausted his administrative remedies as required under the statute. The Court agrees. While Defendant attaches a request to the warden, the request is for home confinement under the Coronavirus Aid, Relief, and Economic Security (CARES) Act of 2020. (Doc. No. 40, at 3).[2] It is not a request for compassionate release despite Defendant's handwritten note labeling it as such.[3] Therefore, Defendant has not shown that he has exhausted his remedies as required under 18 U.S.C. § 3582(c).

In its response to Defendant's Motion, the Government states that Defendant asks the Court to ignore the exhaustion requirement in light of the crisis presented by the COVID-19 pandemic. While the Court does not see any such argument in Defendant's Motion, even if Defendant had

---

[2] In response to the COVID-19 pandemic, the President signed the CARES Act into law on March 27, 2020. Pub. L. 116-136, 134 Stat. 281, 516. Section 12003(b)(2) of the Act gives the Director of the BOP authority to lengthen the maximum amount of time a prisoner may be placed in home confinement under 18 U.S.C. § 3624(c)(2) during the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP. On April 3, 2020, the Attorney General issued a memorandum to the Director of BOP making that finding and directing the immediate processing of suitable candidates for home confinement.

[3] Defendant specifically asks for home confinement under the CARES Act in his request to the warden. It appears he made multiple handwritten notations on the request after it was submitted to the warden, including "Request for Compassionate release" found at the top of the page.

5

made this argument, it would not be persuasive. Defendant is currently confined at FCI Beckley. According to the BOP's website, FCI Beckley has no active cases of COVID-19 among the inmates or staff. With no active COVID-19 cases at FCI Beckley, requiring Defendant to exhaust his administrative remedies within the BOP before petitioning this Court would not be futile, result in any "catastrophic health consequences," or unduly prejudice Defendant. *See United States v. Fraction*, No. 3:14-CR-305, 2020 WL 3432670, at *7 (M.D. Pa. June 23, 2020) (finding the defendant did "not demonstrate any 'catastrophic health consequences' to make exhaustion futile or show that he could be unduly prejudiced if he had to wait to exhaust his administrative remedies with the BOP"). Generalized concerns regarding the possible spread of COVID-19 to the inmate population at FCI Beckley are not enough for this Court to excuse the exhaustion requirement, especially considering the BOP's statutory role and its extensive and professional efforts to curtail the virus's spread at FCI Beckley. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

The Court does not intend to diminish Defendant's concerns about the pandemic, especially given his health conditions. However, given the scale of the COVID-19 pandemic and the complexity of the situation in federal institutions, it is even more important that Defendant first attempt to use the BOP's administrative remedies. *See United States v. Annis*, 2020 WL 1812421, at *2 (D. Minn. Apr. 9, 2020). Not only is exhaustion of administrative remedies required under the law, but it also "makes good policy sense." *United States v. Fevold*, 2020 WL 1703846, at *1 (E.D. Wis. Apr. 8, 2020). "The warden and those in charge of inmate health and safety are in a far better position than the sentencing court to know the risks inmates in their custody are facing and the facility's ability to mitigate those risks and provide for the care and safety of the inmates." *Id.* As the Third Circuit has recognized, "[g]iven BOP's shared desire for a safe and healthy prison

environment . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *Raia*, 954 F.3d at 597.

For these reasons, the Court will deny Defendant's Motion without prejudice to a renewed motion once he has appropriately exhausted his administrative remedies.

### III.     CARES ACT

Defendant also requests that this Court order the BOP to place him in home confinement. According to the BOP, Defendant is not eligible for home confinement because he does not meet the necessary criteria. Namely, BOP has rejected home confinement for Defendant because he has a history of violence and has not served 50% of his sentence. (Doc. No. 43, at 7-8).

Once a sentence is imposed, the BOP is solely responsible for determining an inmate's place of incarceration. *See* 18 U.S.C. § 3621(b); *McKune v. Lile*, 536 U.S. 24, 39 (2002) (plurality opinion) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Moore v. United States Att'g Gen.*, 473 F.2d 1375, 1376 (5th Cir. 1973) (per curiam). The Court has no authority to direct the BOP to place a defendant in home confinement. Because Defendant's request for home confinement alters only the place of incarceration, not the actual term of incarceration, only BOP may grant or deny his request. Accordingly, to the extent Defendant requests home confinement under the CARES Act, his Motion will be denied.

### IV.     ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion for compassionate release, (Doc. No. 40), is **DENIED** without prejudice to a renewed motion after exhaustion of his administrative remedies.

**SO ORDERED.**

Signed: August 6, 2020

*/s/ Kenneth D. Bell*
Kenneth D. Bell
United States District Judge