IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CRIMINAL ACTION NO. 5:18-CR-00017-KDB-DCK-1

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | **ORDER** |
| RUSSELL THOMAS MELILLO, | |
| Defendant. | |

**THIS MATTER** is before the Court on Defendant's "Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)." (Doc. No. 50). The Government opposes the motion. Because Defendant has not met his burden to establish that a sentencing reduction is warranted under 18 U.S.C. § 3582(c), the Court will deny his motion.

### I. BACKGROUND

In 2018, Defendant pled guilty to one count of conspiracy to distribute and to possess with intent to distribute methamphetamine and one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841 and 846. (Doc. No. 21). As noted in the Presentence Investigation Report ("PSR"), Defendant participated in a methamphetamine-distribution conspiracy in western North Carolina with intent to distribute 500 grams or more of methamphetamine. (Doc. No. 30 at 3). On January 6, 2018, law enforcement arrested Defendant for possessing 29 grams of methamphetamine. *Id.* at 4. He then volunteered to cooperate with authorities and provided his source of supply. *Id.* Unfortunately, when he met with investigators on January 29, 2018, Defendant possessed more methamphetamine along with his .45 caliber handgun. *Id.*

The Court sentenced Defendant to 92 months of imprisonment for the offense on March 7, 2019. (Doc. No. 35).

Defendant is a 45-year-old male serving his prison sentence at FCI Beckley in West Virginia. His current projected release date is September 14, 2024. This is Defendant's fourth motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Defendant again bases his motion on the threat posed by the COVID-19 pandemic. Defendant states that he has a history of cardiac arrest with aspiration resulting in severe lung damage, heart damage, hypertension, shortness of breath requiring an inhaler, seizures from post-concussive/epilepsy disorder, liver damage from 21 years of Hepatitis C and a voluminous history of psychiatric disorders to include hospitalization and commitment which place him at a greater risk of death from COVID-19 complications. (Doc. No. 50, at 1). According to his PSR, Defendant has a seizure disorder and is prescribed Lamictal and Lisinopril to treat the condition. (Doc. No. 30, ¶ 63). Additionally, he has a history of mental health issues and has attempted suicide seven times and been diagnosed with bi-polar disorder, schizoaffective disorder, mania, and attention deficit and hyperactive disorder. *Id.* ¶ 64. In a prior Government response to one of Defendant's motions, the Government attached 247 pages of BOP medical records covering the period from April 2019 to July 20, 2020. (Doc. No. 43, Exhibit 1). The Government noted that the Defendant's current conditions include hypertension for which he is prescribed medication. (Doc. No. 43, at 20). Furthermore, the Government noted that all of Defendant's medical conditions appear to be well managed by medication. *Id.* The Government responded to Defendant's now fourth motion on December 18, 2020, opposing Defendant's request and asking the Court to deny his motion. (Doc. No. 52).

## II. LEGAL STANDARD

By statute, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of the exceptions to this general rule is a motion for compassionate release. The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, now provides in pertinent part:

> **(c) Modification of an imposed term of imprisonment.—**The Court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

While the statute references an applicable policy statement, there is as of now no applicable policy statement governing compassionate release motions filed by defendants. *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). As a result, district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. *Id*.

Thus, to succeed on a motion for compassionate release under 18 U.S.C. § 3582(c), a defendant must first exhaust his administrative remedies as described by the statute. Once the

defendant has exhausted his remedies, the court determines whether extraordinary and compelling reasons warrant a reduction and considers the relevant sentencing factors under § 3553(a) to determine if an individualized application of those factors support compassionate release. A defendant seeking compassionate release has the burden of establishing that such relief is warranted. *See, e.g., United States v. Ebbers,* 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020); *United States v. Heromin,* No. 8:11-cr-550-T-33SPF, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019).

### III. DISCUSSION

*A. Exhaustion of Administrative Remedies*

A prisoner may bring a motion for compassionate release before the court only if he "has fully exhausted all administrative rights to appeal a failure" of the BOP to bring a motion on his behalf or if 30 days have passed since the warden received his request, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Courts are split over whether the exhaustion requirement is jurisdictional or is a "case processing" rule that can be waived. *Compare United States v. Brown*, No. CR 12-20066-37-KHV, 2020 WL 1935053, at *1 (D. Kan. Apr. 22, 2020) ("The requirement to exhaust administrative remedies or wait 30 days after the warden receives a request is jurisdictional.") *with United States v. Alam*, -- F.3d --, No. 20-1298, 2020 WL 2845694, at *2 (6th Cir. June 2, 2020) (holding the administrative exhaustion requirement is non-jurisdictional). The majority view is that the exhaustion requirement is a non-jurisdictional requirement that can be waived. *See, e.g.*, *United States v. Smith*, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *2-3 (S.D.N.Y. Apr. 13, 2020) (collecting cases).

If the rule is not jurisdictional, then it can be waived, forfeited, or abandoned, and is otherwise subject to exceptions. *See United States v. Zekerman*, 16 Cr. 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Russo*, No. 16-cr-441 (LJL), 2020 WL 1862294, at *5

(S.D.N.Y. Apr. 14, 2020). Such an exception may include where the exhaustion requirement would be futile. *See, e.g.*, *Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *United States v. Colvin*, No. 3:19cr179 (JBA), 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) ("[I]n light of the urgency of Defendant's request, the likelihood that she cannot exhaust her administrative appeals during her remaining eleven days of imprisonment, and the potential for serious health consequences, the [c]ourt waives the exhaustion requirement of Section 3582(c)(1)(A).").

Defendant made a request for compassionate release to the warden on September 16, 2020 and it was denied on September 18, 2020. (Doc. No. 54-1, at 1 and 2). Although the Defendant should have appealed the warden's denial within the BOP to fully exhaust his remedies under the compassionate release statute, the Government does not argue that Defendant's motion should be denied for failure to exhaust his administrative remedies. Because the Government did not raise the issue of exhaustion, the Court deems that it has waived the defense. Accordingly, the Court will proceed to address the merits of Defendant's motion.

B. *Extraordinary and Compelling Reasons*

Defendant asserts that his vulnerability to COVID-19 is an extraordinary and compelling reason for an immediate reduction in his sentence. Defendant does not contend that he would be eligible for compassionate release absent the pandemic.[1] The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not meet the criteria set forth by the Sentencing Commission and therefore could not alone provide the basis for a sentence reduction. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently

---

[1] As of January 4, 2021 at FCI Beckley, there are 1,498 total inmates and the confirmed active cases of COVID-19 are 26 inmates and 5 staff members; there are 192 inmates and 37 staff members who have recovered from COVID-19; and, there are zero inmate and zero staff deaths from COVID-19. Available at: www.bop.gov/coronavirus/ (website updates daily).

justify compassionate release." *United States v. Raia,* 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Eberhart,* 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A)."). "[A] generalized risk of contracting COVID-19, or potentially developing the more severe symptoms associated with it, are not the type of 'extraordinary and compelling reasons' that justify compassionate release." *United States v. Buchanon,* No. 3:18CR199, 2020 WL 5026849, *2 (E.D. Tenn. 2020).

Defendant relies largely on his alleged heart and lung conditions to support his motion. However, his BOP medical records from December 2019 to December 2020 do not reveal any such condition. (Doc. No. 55-1). Rather, Defendant and his BOP medical records cite hypertension, which the CDC lists as a medical condition that "might" increase the risk for severe illness from COVID-19.

As courts have found, a diagnosis of hypertension does not necessarily establish an "extraordinary and compelling" circumstance warranting compassionate release. *See United States v. Brown,* No. 3:16CR209-MOC, 2020 WL 2926472, at *1-*2 (W.D.N.C. 2020) (denying compassionate release to inmate with hypertension, diabetes, and pulmonary sarcoidosis); *Buchanon,* 2020 WL 5026849 at *2 (denying compassionate release to inmate diagnosed with sarcoidosis and hypertension); *Durham,* 2020 WL 5577884, at *2 (hypertension is not sufficient: "Given the lack of data and certainty regarding this second group of conditions, the fact that Defendant has a condition that may increase his risk for severe illness from COVID-19, without more, does not present an 'extraordinary and compelling reason' under the compassionate release statute and U.S.S.G. § 1B1.13."); *cf. United States v. Williams,* No. 5:19CR342, 2020 WL

2404680, at * (E.D.N.C. 2020) (denying pre-trial release to detainee with asthma, COPD, congestive heart failure, and hypertension).

Defendant is 45 years old and the extensive medical records provided by the BOP show that he is receiving careful treatment of all his conditions while in BOP and that his conditions appear to be well-controlled, especially his hypertension. *See generally* Doc. No. 55-1.[2] For example, medical personnel as recently as August 6, 2020, saw Defendant for his hypertension and noted nothing significant. *Id.* at 16. The medical provider documented that Defendant was taking his medications as prescribed, that he had no problems or issues with his medication, that his "BP is within clinical target parameters," and Defendant had "no complaints referable to his blood pressure." *Id.* Although Defendant's medical conditions require monitoring and treatment, he has not shown that they qualify as "extraordinary and compelling reasons" to reduce his sentence or that he has a serious medical condition that substantially diminishes his ability to provide self-care within a correctional facility.

Despite his fears relating to contracting COVID-19 while incarcerated, Defendant is only 45 years old and does not appear to be in imminent danger. Accordingly, the Court finds that Defendant has not shown that "extraordinary and compelling reasons" support his release.

### IV. APPOINTMENT OF COUNSEL

The Defendant again asks the Court to appoint him counsel to assist him with his request for a compassionate release. However, "a criminal defendant has no right to counsel beyond his first appeal." *United States v. Legree,* 205 F.3d 724, 730 (4th Cir. 2000) (quoting *Coleman v. Thompson,* 501 U.S. 722, 756 (1991). "Though in some exceptional cases due process does

---

[2] Based on documentation received from FCI Beckley, Defendant has received prescriptions for all his documented conditions. However, Defendant has not submitted any support for the severity of his conditions, and chronic conditions that can be managed in prison are not a sufficient basis for compassionate release. *See United States v. Ayon-Nunez,* No. 1:16-CR-130-DAD, 2020 WL 704784, at *3 (E.D. Cal. Feb. 12, 2020).

mandate the appointment of counsel for certain postconviction proceedings," the Defendant has not presented a showing of such exceptional circumstances in this case. *Legree,* 205 F.3d at 730 (internal citation omitted). The Court finds that the interests of justice do not require appointment of counsel to assist the Defendant at this time.

## V. ORDER

For these reasons, Defendant's "Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)," (Doc. No. 50), is **DENIED**.

**SO ORDERED.**

Signed: January 4, 2021

Kenneth D. Bell
United States District Judge